## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   15-cv-1131 |
| ) | |
| RHEE INVESTORS, INC., an Illinois ) | |
| Corporation, and SOHIE RHEE ) | |
| ) | |
| Defendants. ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's Motion for Default Judgment. (Doc. 10). Plaintiff seeks judgment in its favor, and requests an award of $641,171.27, which includes (1) recurring fees with interest; (2) liquidated damages with interest; and (3) both attorneys' fees and costs. As explained herein, Plaintiff's Motion is GRANTED in part and DENIED in part. The Court will enter judgment and award Plaintiff $640,644.93 in damages.

**PROCEDURAL BACKGROUND**

On March 30, 2015, Plaintiff Days Inns Worldwide, Inc. ("Days Inns") filed a six-count Complaint against Defendants Rhee Investors, Inc. ("Rhee Investors") and Sohie Rhee ("S. Rhee"). (Doc. 1). Plaintiff and Rhee Investors had entered into a licensing agreement for the operation of a 144-room Days Inn lodging facility in Macomb, Illinois, and S. Rhee served as a guarantor for Rhee Investors. (*Id.* at ¶¶ 7, 3). As explained in further detail below, Defendant Rhee Investors unilaterally terminated the Licensing Agreement, and has failed to make payments that are due

under the agreement. Days Inns asserts that both Defendants defaulted on their contractual obligations, and seeks damages that are owed under the Licensing Agreement.

Plaintiff served Defendant Rhee Investors with a summons and the Complaint on July 9, 2015 (Doc. 7) and Defendant S. Rhee on April 15, 2015 (Doc. 5). Both Defendants failed to appear and file an answer, and Magistrate Judge Tom Schanzle-Haskins entered an Order of Default on September 15, 2015. (Doc. 9).

## FACTUAL BACKGROUND

On February 29, 2008, Days Inns entered into a license agreement with Rhee Investors for the operation of a 144-room Days Inn lodging facility located at 1400 N. Lafayette Street in Macomb, Illinois 61455. (Doc. 1 at ¶ 7). The License Agreement is included as part of the Complaint, to which it is attached as Exhibit A. (Doc. 1-1 at 1-52). The License Agreement obligates Rhee Investors to operate the facility as a Days Inn until March 15, 2023. (Doc. 1 at ¶ 8; Doc. 1-1 at 10). S. Rhee executed a guaranty, effective the date of the License Agreement, in which she agreed to "immediately make each payment and perform or cause [Rhee Investors] to perform, each unpaid or underperformed obligation of [Rhee Investors] under the [License] Agreement." (Doc. 1 at ¶¶ 15-16, Doc. 1-1 at 54).

### I. Obligations Under the Agreement

Rhee Investors agreed to a number of obligations under the License Agreement. First, pursuant to section 7, 18.1, and Schedule C of the License Agreement, Rhee Investors agreed to make periodic payments to Days Inns for royalties, system assessments, taxes, interest, reservation system user fees, and

other fees. (Doc. 1 at ¶ 9, Doc. 1-1 at 11, 23, and 45-47). Section 7.1 of the License Agreement refers to these as "Recurring Fees." (Doc. 1-1 at 11). The License Agreement obligates Rhee Investors to pay the Recurring Fees "ten days after the month in which they accrue, without billing or demand." (*Id.*). Pursuant to section 7.3 of the License Agreement, Rhee Investors agreed to pay interest of "1.5% per month or the maximum rate permitted by applicable law, whichever is less" on past due amounts of Recurring Fees payable to Days Inns. (Doc. 1 at ¶ 10, Doc. 1-1 at 11).

Section 11.2 of the License Agreement also provides that Days Inns could terminate the License Agreement if Rhee Investors either stopped operating the facility as a Days Inn lodging establishment or lost possession or the right to possession of the facility. (Doc. 1 at ¶ 12, Doc. 1-1 at 15). In the event that Days Inns terminated the License Agreement pursuant to section 11.2, Rhee Investors agreed to pay liquidated damages pursuant to a formula set out in section 12.1 of the License Agreement. (Doc. 1 at ¶ 13, Doc. 1-1 at 16). Relevant here, the minimum amount of liquidated damages assessed under the License Agreement is $2,000 multiplied by the number of guest rooms authorized by Schedule B of the agreement. (Doc. 1-1 at 16). The facility included 144 authorized guest rooms. (Doc. 1-1 at 36). The liquidated damages provision also provides that Rhee Investors must pay interest of 1.5% per month on outstanding liquidated damages that are not paid within thirty days of termination. (*See* Doc. 1-1 at 16).

Finally, section 17.4 of the License Agreement provides that in the event of a dispute, the non-prevailing party "will pay all costs and expenses, including

reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Doc. 1-1 at 21).

## II. Termination of the License Agreement

On November 19, 2012, Rhee Investors agreed by stipulation in a foreclosure action to surrender possession of the facility to BBCN Bank, formerly known as Center Bank on November 30, 2012. (Doc. 1 at ¶ 17; Doc. 1-1 at 56-57). By letter dated December 28, 2012, Days Inns acknowledged that the License Agreement terminated on November 30, 2012 because Rhee Investors relinquished possession of the facility and therefore stopped operating it. (Doc. 1 at ¶ 18, Doc. 1-1 at 59-60).

## DISCUSSION

Plaintiff has moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b). Default judgment establishes, "as a matter of law, that defendants are liable to plaintiff on each cause of action." *e360 Insight v. Spamhaus* Project, 500 F.3d 594, 602 (7th Cir. 2007). The well-pleaded facts of the Complaint relating to liability are taken as true upon default. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Plaintiff's Complaint contains well-pleaded facts that establish that Rhee Investors and S. Rhee are liable to Days Inns for unpaid recurring fees, liquidated damages, and attorneys' fees and costs because Rhee Investors terminated the License Agreement.

Although liability may be established from the well-pleaded facts of a complaint, a plaintiff must still show it is entitled to the amount of damages it seeks. *Dundee Cement*, 722 F.2d at 1323. Default judgment may not be granted without a hearing on damages unless the amount of damages claimed is "capable of

ascertainment from definite figures in the documentary evidence or in detailed affidavits." *Id.* These damages must be ascertained with "reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). The Court concludes that Plaintiff has produced competent evidence that establishes that it is entitled to damages.

### I. Recurring Fees

As explained above, under the Licensing Agreement, Rhee Investors was required to pay Days Inns certain recurring fees, and also needed to pay interest on unpaid recurring fees. Days Inns seeks $195,496.02 in unpaid Recurring Fees, which is inclusive of interest calculated at a rate of 1.5% per month pursuant to section 7.3 of the License Agreement. The Court concludes that Plaintiff has established with reasonable certainty that it is entitled to $194,969.68 in unpaid recurring fees.

Plaintiff submitted in support of its Motion for Default Judgment the affidavit of Suzanne Fenimore, who is Days Inns' Senior Director of Contracts Compliance. (Doc. 10-3). Fenimore relied upon an itemized statement prepared by Days Inns, which sets forth the amount of Recurring Fees due and owing from Defendants as of September 15, 2015. (*Id.* at ¶ 15; Doc. 10-4 at 73-79). Plaintiff's itemized statement seeks Recurring Fees from January 2011 through March 2013, along with interest that has accumulated since Defendant incurred those fees. (*See* Doc. 10-4 at 73-79). The Court will award damages for Recurring Fees from January 2011 through November 2012, but will exclude $526.34 of fees incurred in December 2012, February 2013, and March 2013. (*Id.* at 78).

The first reason the Court excludes these fees is that they were incurred after the Licensing Agreement terminated on November 30, 2012. Pursuant to Section 13.2 of the License Agreement, these are not recoverable Recurring Fees. It states that Rhee Investors owed Days Inns "all amounts owed to us under this Agreement within 10 days after termination." (Doc. 1-1 at 17). Yet, the Recurring Fees that Plaintiff seeks to recover were billed more than ten days after termination. For example, on December 22, 2012, Plaintiff billed Rhee Investors $21.91 for "WYNREWARDS 5%," and on February 28, 2013, Plaintiff Billed Rhee Investors for $33.56 for "GUEST SATISFACTION."

The Court also concludes that one of the post-November 2012 fees does not qualify as a Recurring Fee. Plaintiff seeks $470.87 for "HUGHESNET DECOMMISSION FEES" that accrued in March of 2013. Plaintiff has not established that this is a Recurring Fee. Plaintiff addressed this fee in its termination acknowledgment letter sent to Rhee Investors in December of 2012. It noted that in addition to the Recurring Fees and Liquidated Damages, Rhee Investors is liable for "de-commission fees of $325.00 for the termination of the Connectivity Equipment Lease and Services Addendum (the "Addendum")," which "also terminated on the Termination Date." (Doc. 1-1 at 59). The letter's implication is that the decommission fee is a distinct obligation from the Liquidated Damages and Recurring Fee Obligations, and Plaintiff has not directed the Court to anything in the License Agreement that would require Defendants to pay it. Therefore, the Court will not include it as part of the Recurring Fees owed to Plaintiff.

## II. Liquidated Damages

As explained above, the License Agreement establishes that Rhee Investors must pay a minimum amount of Liquidated Damages: $2,000 multiplied by the number of authorized rooms plus interest of 1.5% per month. Plaintiff seeks $434,859.02 in Liquidated Damages.

Fenimore calculated the amount of Liquidated Damages by multiplying the 144 guest rooms by $2,000 and determined that Defendants owe $288,000. (Doc. 10-3 at ¶ 20). She then calculated that Plaintiff would owe $142.03 of interest per day, and multiplied that by 1034 days (the amount of time between December 30, 2012 and October 30, 2015) to conclude that Defendants owe $146,859.02 in interest. The Court concludes that Plaintiff has established the amount of Liquidated Damages with reasonable certainty.[1]

## III.    Attorneys' Fees and Costs

Finally, Plaintiff seeks attorneys' fees and costs pursuant to section 17.4 of the License Agreement. Plaintiff's attorney, Joseph Hanna, has provided a declaration to establish these damages. (*See* Doc. 10-1). Plaintiff's attorney billed it a flat fee of $10,000.00 in connection with the matter, exclusive of expenses.

---

[1] Pursuant to a Choice of Law clause, the License Agreement is governed by New Jersey law. (*See* Doc. 1-1 at 21). Under New Jersey law, liquidated damages clauses are enforceable when they are reasonable. *MetLife Cap. Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 495 (1999). This is a question of law, which requires reviewing courts to consider the difficulty in assessing damages, the intention of the parties, actual damages sustained, and the bargaining power of both of the parties. *Id.* Liquidated damages clauses carry a presumption of validity, and the party opposing them has the burden of showing that they are unreasonable. *Shree Ganesh, Inc. v. Days Inns Worldwide, Inc.*, 192 F. Supp. 2d 774, 784 (N.D. Ohio 2002). Here, because both Defendants have defaulted, they cannot overcome the presumption that the liquidated damages in the License Agreement are reasonable.

Plaintiff also incurred $816.23 in expenses, which includes filing fees, service of process fees, and duplication fees. The Court concludes that the attorneys' fees are reasonable and the costs are allowable.

### A. Attorneys' Fees

The Seventh Circuit "has read a 'reasonableness' requirement into contractual fee-shifting provisions" such as the one present here. *Logan Knitting Mills, Inc. v. Matrix Grp. Ltd., Inc.*, No. 04 C 7596, 2007 WL 1594482, at *2 (N.D. Ill. June 1, 2007). "If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mkt'g Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Instead, it is proper for a court to consider "market mechanisms," including "bills that meet market standards in their detail." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999).

District courts must review fee petitions submitted pursuant to a contractual fee-shifting provision to ensure that the fees "are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself." *Id*. The best evidence of reasonableness in these circumstances is whether the party seeking fees was willing to pay them earlier. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). This Court, however, must seek to guard against the moral hazard that a prevailing party "ran the meter" because they thought that the other party "would have to cover the tab." *Balcor*, 73 F.3d at 153. Therefore, the inquiry cannot end with looking into whether there is proof of payment. Otherwise,

"courts would be reading into contractual fee provisions a standard of 'prepayment' rather than 'reasonableness.'" *Logan Knitting Mills, Inc.*, 2007 WL 1594482, at *2. To do this, the Court should consider whether the aggregate amount of fees are reasonable compared to what's at stake and also by considering the opposing party's litigation strategy. *See Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013).

The Court concludes that Plaintiff incurred reasonable attorneys' fees of $10,000. Plaintiff was willing to pay the attorneys' fees earlier, as its attorneys have already billed it a flat fee of $10,000. *See Cintas Corp.*, 517 F.3d at 469. Even though Plaintiff's attorneys were not required to do much work beyond preparing a Complaint, Motion for Default, and Motion for Default Judgment, these are not pie in the sky numbers. *See Medcom Holding Co.*, 200 F.3d at 520. Compared to the amount of liquidated damages at stake alone – $288,000 before adding interest – the aggregated fees are reasonable. *See Johnson Controls, Inc.*, 712 F.3d at 1027.

**B. Costs**

Courts assess costs pursuant to Federal Rule of Civil Procedure 54(d). This Court's Local Rule 54.1(B) requires that parties seeking costs file a Form AO-133 as a summary of the Bill of Costs. Plaintiff did not file this form, but instead itemized its costs in an exhibit to attorney Hanna's declaration. Each of the costs that Plaintiff seeks are authorized by 28 U.S.C. § 1920(1) and included among the categories of costs on Form AO-133. *See* Bill of Costs, Form AO-133, *available at* http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO133.pdf. Rather than

9

demanding that Plaintiff strictly comply with Local Rule 54.1(B), the Court will permit Plaintiff to recover $816.23 in costs.

## CONCLUSION

By the allegations in its Complaint, Plaintiff Days Inns Worldwide, Inc. has established that Defendant Rhee Investors, Inc. is liable to it for recurring fees, liquidated damages, and reasonable attorneys' fees and costs because Rhee Investors unilaterally terminated the parties' License Agreement. Defendant Sohie Rhee is liable to Plaintiff because she served as Rhee Investors' guarantor, and Rhee Investors defaulted on its obligations.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Days Inns' motion for default judgment (Doc. 10). The Clerk is directed to ENTER default judgment against Defendants in the total amount of $640,644.93. IT IS SO ORDERED.

Entered this 16th day of November, 2015.

s/Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
